(162 App. Div. 190)

## HYGIENIC ICE & REFRIGERATING CO. v. PHILADELPHIA CASUALTY CO.

(Supreme Court, Appellate Division, Third Department. May 6, 1914.)

1. INSURANCE (§ 333*)—INDEMNITY INSURANCE—WARRANTY AGAINST VICIOUSNESS OF HORSE.

A warranty of the insured incorporated into a policy indemnifying it against liability for injuries caused by its horses and vehicles, that no known "vicious animal is used," was continuing and promissory in its nature, and related to a known vicious horse subsequently purchased, for injuries resulting from the vicious nature of which the policy furnished no protection.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 842–846; Dec. Dig. § 333.*]

2. INSURANCE (§ 333*)—INDEMNITY INSURANCE—CONSTRUCTION OF POLICY.

An indemnity policy against liability for injuries caused by insured's horses and vehicles, except loss caused "by any animal or vehicle while being driven by any person under the age of sixteen years," also containing a warranty that such a person would not be permitted "to drive," did not cover a loss caused by a horse being led by a boy under that age; the horse being in his custody and control.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 842–846; Dec. Dig. § 333.*]

3. INSURANCE (§ 388*)—INDEMNITY INSURANCE—WAIVER OF WARRANTY.

A warranty in an indemnity policy that insured used no vicious animal was not waived by the insurer in an action against insured for injuries caused by a vicious horse, where insured denied its viciousness, and the insurer informed insured that it would not be liable if the horse was vicious, and withdrew when it found that that was the only ground of insured's liability.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1026, 1027, 1030, 1035, 1040, 1057; Dec. Dig. § 388.*]

4. INSURANCE (§ 388*)—INDEMNITY INSURANCE—WAIVER OF POLICY PROVISION.

A provision in an indemnity policy excepting loss, caused by any animal driven by a person under 16 years of age, was not waived by the insurer's defending a suit against insured for injuries caused by a horse in the custody of a 15 year old boy, where insured's report stated that the boy was 16 and the horse was not in his custody.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1026, 1027, 1030, 1035, 1040, 1057; Dec. Dig. § 388.*]

Smith, P. J., and Woodward, J., dissenting in part.

Appeal from Trial Term, Albany County.

Action by the Hygienic Ice & Refrigerating Company against the Philadelphia Casualty Company. Judgment for defendant, and plaintiff appeals. Affirmed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Hendrickson & Delaney, of Albany (W. A. Hendrickson, of Albany, of counsel), for appellant.

P. C. Dugan, of Albany, for respondent.

JOHN M. KELLOGG, J. This action is brought upon an indemnity policy to recover the amount which the plaintiff has been required

to pay upon a judgment recovered against it by Adam Raible for injuries received by him while he was leading one of the plaintiff's horses from the stable to the watering trough. Raible was a boy 15 years of age and was not in the employ of the plaintiff. He was hanging around the plaintiff's stables, and one Joyce, an employé, suffered him to lead the horse. His complaint alleged, in substance, that the ice company put the horse in his charge knowing it to be a vicious animal. He had a verdict, which we reversed in 134 App. Div. 705, 119 N. Y. Supp. 138, holding that Joyce had no authority to permit the boy to lead the horse, and the company was not responsible therefor: That the only ground upon which recovery could be had, the known viciousness of the horse, was not submitted to the jury. Upon the second trial he recovered a judgment upon that ground.

The policy agreed to indemnify the assured against loss resulting from liability imposed by law upon it for damages on account of death or bodily injuries caused by accident during the life of the policy, suffered by any person, by reason of the use or maintenance, for the purposes described in the declarations attached to the policy, of any of the animals or vehicles therein described, while in the charge of the assured, or of any person therein provided for; or while in charge of any person in going to or from a blacksmith shop, or while in the shop of such smith, or in and during the loading or unloading of such vehicles, provided a specific premium shall have been exhibited in declaration No. 4 for such hazard, but not otherwise. It is not claimed that a special premium was so exhibited, except for loading and unloading, and therefore the insurance covers only injuries by animals while in charge of the assured, or of a person provided for in the declaration, or during the loading or unloading of the vehicles. The policy provided that it does not cover loss caused "by any animal or vehicle while being driven by any person under the age of sixteen years." The declaration provided for no person being in charge of the horses other than the drivers and employés.

The declaration in behalf of the assured, which it and the policy declared was incorporated in the policy and became warranties upon the parties upon the delivery and acceptance of the policy, provided, among other things:

Section 4(b) Total number of horses or other animals, owned or hired for team use, 12. (c) Number of drivers employed or hired, 6. (e) Number and occupation of all who drive but who are not regularly employed as driver, ———. (f) Number of drivers' helpers employed in loading and unloading, 6. Number of teams in use, 6.

5. The enumerations, descriptions and estimates above given include all teams owned or hired by assured, excepting. No exceptions.

6. None of the horses enumerated are used under the saddle, excepting. No exceptions.

7. All teams are used exclusively in assured's trade or business, excepting. No exceptions.

8. The teams above mentioned are stabled at Albany, N. Y.

9. No vicious animal is used, so far as assured knows, excepting. No exceptions.

10. No person under sixteen years of age is or will be permitted to drive * * * · excepting. No exceptions.

11. The enumerations and estimates given in declaration No. 4 are offered for the purpose of computing the advance premium. The company shall be permitted, at all reasonable times during the policy period, or within one year after its expiration, to examine the books or other records of assured so far as relate to the number of teams in use or the compensation of those who drive, and assured will keep a separate account of such compensation during such policy period.

The plaintiff delivered the summons and complaint to the casualty company for defense. The casualty company entered upon the defense and immediately notified the plaintiff that the complaint alleged, among other things, that the horse committing the injury was vicious, "and if those allegations were true the loss was not covered by the policy"; but it accepted the plaintiff's statement that the horse was not vicious, and the question of its liability under the policy would be held in abeyance until the question was determined. After the first judgment the casualty company notified the plaintiff that judgment had been recovered for $4,000 and was based upon evidence that the horse was vicious, and referred to its former letter as to its nonliability on account of damages caused by a vicious horse. It also stated that the policy did not cover a boy under 16 years of age not in the employ of the company, who was leading the horse, and that it would withdraw from the case unless the plaintiff was willing to stipulate that it should continue the appeal and not be responsible for any judgment in the case; that, if that arrangement was not satisfactory, "then you must prepare yourself for our withdrawal from the defense of the case," and asked for an immediate reply. A satisfactory answer not being furnished, the casualty company withdrew from the defense, which was thereafter conducted by the ice company.

The Special Term directed judgment in the case against the plaintiff, upon the ground that the horse was, to the knowledge of the plaintiff, a vicious animal; that a boy under 16 years of age had it in charge; and that it was not in charge of the assured or any person provided for in the declaration.

[1] The Raible judgment clearly rests upon the known vicious character of the horse, and the plaintiff warranted that the horses covered by the policy are not known by it to be vicious. It is, however, urged that the vicious horse which caused the injury was not owned by the plaintiff at the time it signed the declaration, but was acquired by it afterwards, and that the warranty as to the character of the horses related only to the horses then owned. I think this is too narrow a view of the warranty. The policy in terms does not cover any particular horse. It relates to horses which may be used in the business; it was continuing and promissory in its nature. If the warranty does not relate to a horse afterwards purchased, it might as well be claimed that the policy does not relate to such a horse. I think the policy and the warranty cover every horse which the insured may use in its business under the policy, and that if the assured, after the policy, acquired

a known vicious horse, the policy furnished no protection for injuries resulting from its vicious nature.

[2] It is urged that the boy was leading the horse and not driving it. The accident clearly came from the fact that this vicious horse, when being led to water by the boy, was not receiving the attention which a mature person would give to such an animal. It is, in my judgment, a distinction without a difference whether the boy was leading or driving the horse at the time he was injured. The horse was in his custody and controlled by him and was not in the charge of the assured or its servants. I do not think the policy, fairly construed, covers the loss.

[3] It is urged that by defending the Raible action the defendant has waived the provisions in the policy above referred to and is estopped from relying upon them. I think not. The ice company denied the vicious character of the horse, and it was the right and duty of the casualty company to rely upon that denial. It was required to defend against the liabilities which it insured against. It did not defend the action with knowledge that the horse was known by the defendant to be vicious, and as soon as it discovered that liability of the assured must be predicated upon that ground, if any, it promptly withdrew from the case. The letter which it had written to the ice company with reference to its defense, the character of the horse, and the holding of the question of its liability in suspense, informed the ice company of the circumstances and conditions under which it was defending, and did not in any way mislead or prejudice the company.

[4] The ice company was required to and did make report to the casualty company of the accident. It stated the apparent age of the boy, 16 years, and that while he was leading a horse to a watering trough he was kicked by a horse in another team. This statement proved to be untrue. The boy was not 16 years of age, and was not kicked by a horse in another team, but was kicked by the vicious horse he was leading. If the statement in the report was true that the boy while leading a horse was kicked by a horse in another team, the age of the boy was immaterial. The limitation of the policy as to age relates to the person who the insured has put in charge of its horses, not to a person who has no charge or control over the horse causing the injury. The report therefore was misleading, and furnished no basis for a claim of waiver or estoppel. Defendant has not waived its right to rely upon the terms of the policy, and has done no act, with knowledge of the facts, which has estopped it from asserting its rights.

The judgment should be affirmed, with costs. All concur; SMITH, P. J., in the result in memorandum; WOODWARD, J., in result.

SMITH, P. J. (concurring). The policy as I read it was not intended to give indemnity for the accident in question. The liability for which the assured is indemnified is in the nature of the liability provided by these indemnity insurance policies upon automobiles. The horse was required to be in charge of the assured or of any person specifically named in the policy. The persons named in the policy include the drivers and assistant drivers. If it were intended that the

indemnity should cover liability while the horse was in charge of any servant of the assured, mention of these drivers would seem to be surplusage and meaningless. Furthermore, specific provision is made for indemnity against accident while the horse was in charge of any person going to or from a blacksmith or while at the shop of said smith, and in and during the loading or unloading of such vehicles, provided a specific premium shall have been exhibited for such hazard, but not otherwise. To hold that the charge of any servant of the defendant was the charge of the insured under the terms of the policy would nullify the effect of these provisions, because a horse being taken to a blacksmith would be taken by some one in behalf of the assured, and during the loading and unloading of the vehicle would be in charge of a servant. I am not prepared to extend the warranty in the policy to exempt the company from viciousness of a horse which was not owned at the time. The warranty in terms covered the horses then in the possession of the assured, and, as the policy was written by the defendants, it should not be enlarged to include a warranty beyond that actually given. It would be a strained construction to my mind to hold that a boy leading a horse to water was a driver in any sense of the word within the meaning of the policy. I therefore concur in the result reached by Mr. Justice KELLOGG.